# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| AUTUMN RIDGE LANDSCAPING, INC., individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>BOBCAT COMPANY,<br><br>   Defendant. | CASE NO.:_____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Autumn Ridge Landscaping, Inc. ("Plaintiff") individually and on behalf of the other members of the below-defined Minnesota Class it seeks to represent (collectively, the "Class" or "Class members") hereby alleges against Bobcat Company ("Bobcat" or "Defendant"), upon personal knowledge, and as to all other matters upon information and belief, based upon the investigation made by the undersigned attorneys, as follows:

## I.    NATURE OF THE CASE

1.    Plaintiff brings this class action lawsuit seeking damages and equitable relief on its own behalf and on behalf of members of the Class, each of whom purchased and/or leased one or more of the defectively designed and manufactured Bobcat Compact Track Loaders ("Class Loaders" or "Loaders").

2.    Bobcat advertises its various Loaders—including Skid-Steer Loaders, Compact Track Loaders, and Mini Track Loaders—as "tough, agile and versatile compact machine[s]"

1

which feature "superior design that outperforms other brands."[1]  Bobcat touts the durability of its Compact Track Loaders as having "[h]eavy-duty construction, component protection and superior design with minimal moving parts," which are promised to "increase the service life of your [compact track] loader . . . ."[2]  Despite these claims, Bobcat designed and manufactured the Class Loaders in such a way as to render the Class Loaders unable to perform their basic functions, and in such a way as to create imminent danger to the Loader operators, as well as all individuals in the vicinity of an operating Class Loader.

3.     The defect at issue is Bobcat's failure to include a standard and effective metal shield in their Class Loaders, which, if installed, would provide a solid and durable buffer between the rapidly spinning drive belts within the engine of the Loader and the hydraulic, fuel filler, and fuel distribution lines which run along the outside of the engine. As shown in the picture below (highlight added), this metal shield, essential for safe operation of the Loaders, was present in all Bobcat Skid-Steer Loaders, Compact Track Loaders, and Mini Track Loaders manufactured from 1962 to 2013.



---

[1]  Bobcat, <u>New M-2 Series Compact Track Loaders </u>2 (2016); Bobcat, <u>New M-2 Series Skid-Steer Loaders</u> 2 (2016).
[2]  Bobcat, <u>New M-2 Series Compact Track Loaders</u> 3 (2016).

4.      As pictured below (highlight added), in 2014, Bobcat began designing and manufacturing its Skid-Steer, Compact Track, and Mini Track Loader engines without a protective metal shield. The shield is necessary for maintaining separation between the fuel lines and various drive belts which run at high speeds belts within the engine of the Skid-Steer, Compact Track, and Mini Track Loaders.  Under normal operation, in the absence of this shield the belts create friction and wear on the adjoining fuel lines, rupturing the casing of the hydraulic fluid and fuel lines and causing the fuel within the fuel lines to be violently released, vaporize in ambient air, and be quickly ignited by readily available ignition sources, consuming the affected Loaders in flames. This creates an extreme risk of harm to the operator of the Loader, and to nearby workers and bystanders.



5.      Compounding the problem is the heavy-duty and rugged work for which Loaders are intended to be used.  Common Loader uses include pushing and lifting ground or gravel and navigating over ditches and rugged, uneven terrain.  Such operations create more opportunities for the drive belts and the hydraulic fluid and fuel lines to make contact, increasing wear and on the

fuel lines and further adding to the risk of rupturing fuel lines in the absence of a metal mechanical shield.

6.    Starting in 2014, purchasers and operators of newly manufactured Skid-Steer, Compact Track, and Mini Track Loaders began reporting that their Loaders seemingly spontaneously burst into flames, consuming the Loader in the process, causing property damage, and creating the potential for catastrophic personal injury. *See, e.g.*, Plaintiff's Bobcat:



7.    Bobcat knows, or reasonably should know, of the shield defect present in the affected Class Loaders.  Despite its knowledge of the defect, and the extreme risk the defect poses to operators and bystanders present in farms and construction sites across the country, Bobcat has taken no steps to alert owners, operators, or dealers of the defect, and has continued to allow dealers to market and sell the defective Class Loaders across the country.

8.    The average Bobcat Loader retails for more than $50,000.  Each person who purchased a defective Class Loader paid for a defectively designed and unreasonably dangerous

piece of equipment. Each of these current and/or former owners relied on Bobcat's assurances of durability, dependability, and safety in choosing to purchase their Loader, and would have either not chosen to purchase the Class Loader if they had known about the potentially lethal defect at issue, or paid substantially less for their Loader.

## II.    JURISDICTION AND VENUE

9.    This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and Class members are citizens of a state other than that of the Defendant.

10.    This Court has jurisdiction over the parties pursuant to Minn. Stat. §§ 543.19 and 542.09 because the injury and property damage to Plaintiff which resulted from the acts or omissions of Defendant herein alleged occurred in the State of Minnesota, and furthermore, the sale of the defective product occurred in the State of Minnesota.

11.    Venue is proper in this District under 28 U.S.C. § 1391 because Bobcat is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, Plaintiff purchased its affected Class Loader within the District of Minnesota, and Bobcat markets, advertises, and sells Bobcat machines within this District.

## III.    PARTIES

### A.    *Plaintiff*

12.    Plaintiff Autumn Ridge Landscaping, Inc. ("Plaintiff") is a Minnesota corporation with its principal place of business located at 8940 Greenfield Road, Loretto, Minnesota.

13.    Plaintiff purchased a new 2015 model year Bobcat T650 Compact Track Loader in October 2016 from its local Bobcat dealer, Farm-Rite Equipment located at 901 Parker Ave. W, Dassel, Minnesota 55325. Plaintiff purchased its Loader for use on flat farmland, for trench

5

digging, and for leveling, among other routine functions for which the Loader was designed. Plaintiff used its Loader for routine work, and at the time the Loader was consumed with fire as described herein, the Loader had not yet reached the manufacturer-recommended number of work hours for its first recommended maintenance. Plaintiff regularly maintained his Loader in accordance with the specifications outlined in the T650 manual.

14.    On June 6, 2017, two of Plaintiff's employees, Manuel Coronado and Ovidu Berbece Baliant Cristinel (hereafter "Cristinel") were engaged in digging a trench to search for drain tile using a standard trencher attachment on a farm in Wright County, Minnesota. Coronado, the driver, was driving and operating the vehicle on a flat surface pulling the trencher attachment backwards as the trencher is operated at an extremely low rate of speed (around 1 mph), while Cristinel assisted with the trench-digging and drain tile search operations alongside the Loader. At approximately 1:30 p.m., Cristinel noticed flames emanating from the inside of the engine compartment of the Loader, quickly notified Coronado, and told him to exit the Loader immediately. Coronado quickly exited the Loader, and both individuals observed the Loader quickly become engulfed in flame, destroying the Loader beyond repair.

### B.    Defendant

15.    Defendant Bobcat Company ("Bobcat") is a North Dakota Company with its principal place of business located at 250 East Beaton Drive, West Fargo, North Dakota 58078. Bobcat Company operates as a subsidiary of Doosan Infracore Co. Ltd. Doosan Infracore Co. Ltd is a foreign company with its offices located at Doosan Tower 18-12, Euljiro 6-ga, Jung-gu, Seoul, South Korea. Upon information and belief, Doosan Infracore's headquarters within the United States is located at 250 East Beaton Drive, West Fargo, North Dakota 58078.

### IV.    FACTUAL ALLEGATIONS

### A.    Bobcat Loaders

16.    Bobcat currently manufactures and sells three types of loaders—Skid-Steer Loaders, Compact Track Loaders and Mini Track Loaders—designed to assist workers such as construction and farm workers with moving heavy materials such as asphalt, dirt, and feed through the use of a tractor-mounted loader.  The Keller Loader, built and sold in 1957, was the first mechanical loader built and sold for commercial uses in the State of Minnesota.

17.    Beginning in 1962, Bobcat adapted Keller Loader machines and started manufacturing Skid-Steer Loaders.  Skid-Steer Loaders are four-wheeled machines which require the operator to sit inside the Loader in a cab to operate the vehicle.  Skid-Steer Loaders contained two independent transmissions which allowed the Loader to turn in its tracks.

18.    Starting in 1999, Bobcat began manufacturing Compact Track Loaders to provide its customers with a more durable option to the already-existing Skid-Steer Loaders.  Unlike the Skid-Steer Loaders, Compact Track Loaders utilize a continuous track on both sides of the vehicle, instead of four separate wheels.  Early Compact Track Loaders featured innovative rubber tracks and a solid undercarriage which allowed Compact Track Loader owners and operators to work earlier in the spring and later in the winter, extending the construction and working season.

19.    In 2001 Bobcat added the MT50 as the first Mini Track Loader produced in its fleet of loaders.  The Mini Track Loader is smaller in size than Bobcat's Compact Track Loader and, unlike the Skid-Steer Loader and the Compact Track Loader, does not contain a cab, allowing for the operator to walk or stand behind the Loader instead of sitting within the machine.

20.    In marketing and advertising its Compact Track Loaders, Mini Track Loaders, and Skid Steer Loaders, Bobcat repeatedly emphasizes year-round durability and superiority for construction and farm use. Bobcat repeatedly touts the durability, dependability, and safety of its

Loaders, claiming its Loaders are "tough, agile, and versatile compact machine[s]" and feature "a superior design that outperforms other brands while maximizing [] uptime and delivering unmatched comfort."[3]

21.    The equipment is driven by a diesel-fueled engine that supplies mechanical power to the track-based drive system, as well as to a hydraulic pump system that operates the equipment's various hydraulic-driven accessories and implements.

22.    Based on information and belief, the affected Class Loaders manufactured by Bobcat for Loaders manufactured between 1962 and 2014 contained a protective metal shield within the engine which provided a protective barrier between the fuel lines and other parts of the Loader engine.  Specifically, this shield allowed the fuel lines to operate free of interference from fast-moving drive belts located near the hydraulic fluid and fuel lines within the Loader's engine.

### B.    *Bobcat's Loader Engine Re-Design Created an Inherently Unsafe Vehicle*

23.    Starting in 2014, Bobcat re-designed its Skid-Steer, Compact Track, and Mini Track Loader engines, eliminating the protective metal shield from the engine configuration for its Loaders. Without the protective shield, the hydraulic fluid and fuel lines are left exposed to other operating parts of the Loader's engine, including drive belts which are located within inches of the hydraulic fluid and fuel lines. In the absence of a protective metal shield, under normal operating conditions the fuel lines are capable of coming into contact with the fast-moving drive belts which create friction against the protective casing of the fuel lines causing the casing to deteriorate and leak fuel into the engine.

---

[3] Bobcat, New M2-Series Compact Track Loaders 2 (2016).

8

24.     The releases or leaking fuel vaporizes and intermixes with the ambient air to form a flammable diffuse fuel vapor that, within its flammable range, is easily ignited by competent sources of ignition that are present as a consequence of the normal operation of the equipment.

25.     Upon information and belief, the affected Bobcat vehicles include, at least, the following models, referred to herein as the "Class Loaders":

- 2014-2017 Bobcat Skid-Steer Loaders.

- 2014-2017 Bobcat Compact Track Loaders.

- 2014-2017 Bobcat Mini Track Loaders.

**C.     Bobcat Designed an Inherently Unsafe Engine**

26.     The design and construction of the equipment was unsafe and unreasonable because it failed to properly and adequately protect the environment of the hydraulic, fuel filler and fuel distribution system from physical damage, intrusion and/or compromise.

27.     The shield defect in the engine of the Class Loaders presents a constant threat that the Loader will, at minimum, cease operating at any given time and location, but further, presents a constant threat that the friction within the engine will erode the fuel lines, leading to instantaneous combustion of the engine, the Loader, and its occupants.

**D.     Bobcat Had Knowledge of the Loader Engine Defect**

28.     Starting in 2014, owners and operators of Bobcat Skid-Steer Loaders began experiencing engine fires while operating their Bobcat Skid-Steers.[4]

29.     Reports of spontaneous fires spread throughout the construction and farming communities, with some owners of Bobcats showing concern for the propensity for Bobcat's Skid-Steers to catch fire.  One Bobcat owner posted on www.skidsteerforum.com: "Why do Bobcats

---

[4] *See, e.g.*, https://www.youtube.com/watch?v=z4x9v2lZMhk.

catch fire? . . . Is there any reason for this to happen? . . . The reason I ask, I don't want this to happen to any of my machines."[5]

### E.    *Bobcat's Express Limited Warranty*

30.    Bobcat's written warranty guaranteed, among other things, that:

> **[E]ach new Bobcat loader will be free from proven defects in material and workmanship with respect to (i) all components of the product except as otherwise specified herein for twelve (12) months,** (ii) the drive belt from the hydrostatic pump to the engine, for thirty six (36) months, provided that after the initial twelve month warranty period, such warranty shall be limited to parts only and does not include labor, (iii) tracks and Bobcat brand tires, for twelve (12) months on a prorated basis based on the remaining depth of the track or tire at the time any defect is discovered, and (iv) Bobcat brand batteries, for an additional twelve (12) months after the initial twelve month warranty period, provided that Bobcat Company shall only reimburse a fixed portion of the cost of replacing the battery during such additional twelve months.
>  . . .
> **During the warranty period, the authorized Bobcat dealer shall repair or replace, at Bobcat Company's option, without charge for parts and labor, any part of the Bobcat product except as otherwise specified herein which fails because of defects in material or workmanship.**[6]

31.    Bobcat's written Warranty expressly disclaims "ALL OTHER WARRANTIES AND CONDITIONS, EXPRESS OR IMPLIED . . . ."[7]

32.    Within twelve (12) months of purchase, Plaintiff's Bobcat caught fire and was destroyed.

## V.    CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated on behalf of the following Class:

---

[5] SKIDSTEERFORUM.COM, http://www.skidsteerforum.com/DesktopDefault.aspx?tabid=4&frmView=ShowPost&PostID=2128 (last visited November 29, 2017).
[6] Bobcat, Warranty 1 (2016).
[7] *Id.*

All current and former owners or lessees of a "Class Loader," defined as a 2014-2017 model year Bobcat Skid-Steer Loader, Compact Track Loader, or Mini Track Loader purchased or leased within Minnesota.

34.    Not included in the Class is any individual who has personal injury claims arising out of operation of the Class Loaders, as well as Defendant Bobcat Company or any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the definitions of any of the above-mentioned Class during the course of this litigation.

35.    This action has been brought, and may be properly maintained, under Federal Rule of Civil Procedure Rule 23.  The proposed Classes and Class Representative satisfies the criteria of Rule 23 as outlined below.

36.    **Numerosity—Federal Rules of Civil Procedure 23(a)(1).**  Class members are so numerous and dispersed that joinder of all Class members is impracticable.  Although a precise number of Class members is unknown, based on information currently available Plaintiff is informed and believes that there are no less than 100 Class members.  Discovery into Bobcat's sales records will aid in verifying Numerosity of the Class members.  Class members may be notified of this action by Court-approved notice dissemination methods.

37.    **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law and fact which predominate over any questions which may affect individual Class members, including, but not limited to:

    a.    whether Bobcat engaged in the conduct alleged herein;

    b.    whether Bobcat's alleged conduct violates it design duties, warranty laws, and other laws as set forth herein;

c. whether Bobcat designed, manufactured, advertised, marketed, and distributed for sale or lease Class Loaders and placed the Class Loaders into Minnesota's stream of commerce;

d. whether the Class Loaders were defectively designed as alleged herein;

e. whether Bobcat breached any express warranties to Class members;

f. whether Bobcat breached implied warranties to Class members;

g. whether Bobcat had actual or imputed knowledge of the alleged defect;

h. whether Plaintiff and Class members relied on Bobcat's claims of durability, quality, and safety when making the decision to purchase or lease one of the Class Loaders;

i. whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

j. the amount and nature of relief to be awarded to Plaintiff and Class members.

38. **Typicality—Federal Rules of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of Class members because Plaintiff and the Class members purchased or leased Class Loaders defectively designed without a protective metal plate. Had Plaintiff or Class members known of the defect, they would not have purchased or leased the defective Class Loaders. As a result of the wrongful conduct of Defendant Bobcat in defectively designing the engines of the Class Loaders, and then failing to notify or communicate the defect to purchasers or lessees of the defective Class Loaders, Plaintiff and Class members have suffered damages. Plaintiff's claims are further typical of the Class members' claims because Plaintiff's claims arise from the same wrongful conduct that give rise to Class members' claims.

39.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**  The above-named Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the Class it seeks to represent.  Plaintiff has retained counsel that are well-versed and experienced in complex litigation and class action litigation, and Plaintiff and counsel intend to vigorously prosecute this action on behalf of Plaintiff and the Class.  The interests of the Class will be fairly and adequately protected by Plaintiff and counsel.

40.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Injunctive and declaratory relief is appropriate because Bobcat has acted or refused to act on grounds which are generally applicable to Plaintiff and Class members.  Thus, final injunctive and declaratory relief, as described below, is appropriate with respect to the Class.

41.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this action; no unusual difficulties are likely to be encountered in the management and litigation of this class action.  When compared to the burden and expense required to litigate each Class member's claims, each individual Class member's claims are relatively small; thus, it would be impracticable for individual Class members to seek redress for Bobcat's wrongful conduct.  Even if individual Class members could afford individual suits, the court system could not.  Furthermore, individualized litigation creates the potential for embarrassment and inconsistent judgments and increases the delay and expense to all parties and the court system.  Adjudication of this matter by means of a class action ensures the most efficient and time- and cost-effective resolution by providing economy of scale, presents fewer management difficulties, and provides the benefit of a comprehensive supervision and a final adjudication by a single court.

## VI.    CLASS CLAIMS FOR RELIEF

### COUNT 1
### STRICT LIABILITY

42.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

43.    Plaintiff brings this Count individually and on behalf of the other Class members.

44.    Bobcat is the manufacturer of the Class Loaders.

45.    The Class Loaders at issue were defective when designed, manufactured, and marketed by Defendant. Defendant caused to be placed on the market a product in a defective condition that was unsafe for its intended use and unreasonably dangerous to the ultimate consumer, including Plaintiff and Class members.

46.    Defendant failed to exercise reasonable care in designing the Class Loaders so as to avoid creating an unreasonable risk of harm to individuals operating the Class Loaders, as well as individuals in the vicinity of an operating Class Loader, when the Class Loaders were being used for their intended and foreseeable uses.

47.    The defect at issue existed at the time the Class Loaders left Bobcat's exclusive control. The Class Loaders were sold without substantial change to any part of the Class Loader and no change was expected, contemplated, or planned by Defendant. The Class Loaders reached Plaintiff and Class members in the condition intended by Defendant.

48.    As a direct and proximate result of the defect, Plaintiff and Class members have sustained damages in an amount to be determined at trial. Plaintiff, individually and on behalf of Class members, seeks all damages permitted by law in an amount to be proven at trial.

49.    The amount in controversy of Plaintiff and the Class's aggregate claims meets or exceeds $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

## COUNT 2
### NEGLIGENT DESIGN DEFECT

50.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

51.    Plaintiff brings this Count individually and on behalf of the other Class members.

52.    Bobcat is the manufacturer of the Class Loaders.

53.    Bobcat has a duty to use reasonable care in designing its Class Loaders so that they are not unreasonably dangerous when owners and users use them as intended.

54.    Bobcat has a duty to keep up with the knowledge and technology related manufacturing its Class Loaders.

55.    In designing its Class Loaders, Bobcat also has the following duties:

    a.  to understand the danger presented by use of its Class Loaders;

    b.  to know the likelihood of harm that could result from the use of its Class Loaders;

    c.  to know the seriousness of the potential harm that could result from the use of its Class Loaders;

    d.  to know the costs and ease of taking precautions to avoid that harm; and

    e.  to know whether it considered the knowledge and technology related to the manufacture and use of its Class Loaders.

56.    Starting in 2014, Bobcat breached these duties by:

    a.  removing the protective metal shield from its engine compartment;

    b.  failing to recognize or ignoring that removing this shield could and did result in an unreasonably dangerous product that is highly susceptible to catching on fire during normal use; and

c.  failing to keep up with the knowledge and technology related to designing its Class Loaders by when it removed the protective metal shield and what harms the shield helped prevent.

57.  Further, Bobcat breached its design duties in selling the Class Loaders to Plaintiff and Class members when Bobcat knew, or should have known, or was reckless in not knowing, that the omission of the protective metal shield from the Class Loaders' engines rendered the Loaders inherently dangerous and unfit and unsafe for ordinary—or any—use.

58.  The defect at issue existed at the time the Class Loaders left Bobcat's exclusive control. The Class Loaders were sold without substantial change to any part of the Class Loader and no change was expected, contemplated, or planned by Defendant. The Class Loaders reached Plaintiff and Class members in the condition intended by Defendant.

59.  Bobcat's use of the protective metal shield in its 1962 to 2013 Skid Steer, Compact Track, and Mini Compact Track Loaders evidences Bobcat's knowledge of the need to keep separate the fuel and hydraulic fluid lines from the moving and high-temperature components of the Skid Steer, Compact Track, and Mini Compact Track Loader engines and that cost-effective alternative designs were available and known to the industry.

60.  Bobcat's failure to separate the fuel and hydraulic fluid lines from the moving and high-temperature components of the engines rendered the Class Loaders unreasonably dangerous for their intended uses.

61.  Plaintiff notified Bobcat of the damage to Plaintiff's Class Loader shortly after Plaintiff was made aware by its employees that its 2015 T650 Compact Track Loader had been destroyed by fire.

62.    Because Bobcat knew, or reasonably should have known, of the defective design of its Class Loader engines, and because Bobcat, since introducing the Class Loader to the market and receiving complaints of Class Loaders igniting or otherwise bursting into flames, has failed to rectify the situation and/or disclose the defective design, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff and the other Class members resort to an informal dispute resolution procedure and/or afford Bobcat a reasonable opportunity to cure its numerous design duty breaches.

63.    As a direct and proximate result of Bobcat's breach, Plaintiff and Class members have sustained damages in an amount to be determined at trial. Plaintiff, individually and on behalf of Class members, seeks all damages permitted by law in an amount to be proven at trial.

64.    The amount in controversy of Plaintiff and the Class's aggregate claims meets or exceeds $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

**COUNT 3**
**BREACH OF EXPRESS WARRANTY**
**Minn. Stat. §§ 325G.19, 336.2-313**

65.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

66.    Plaintiff brings this Count individually and on behalf of all Class members.

67.    Minn. Stat. § 325G.19 provides that "[t]he maker of an express warranty arising out of a consumer sale in this state shall honor the terms of the express warranty."  Minn. Stat. § 325G.19, subd. 2.

68. Bobcat's express warranty promised, among other things, that "each new Bobcat loader will be free from proven defects in material and workmanship with respect to [] all components of the product except as otherwise specified . . . ."[8]

69. All Class Loaders manufactured by Bobcat were sold to Plaintiff and Class under the terms of Bobcat's express written warranty.

70. The Class Loaders sold to Plaintiff and Class members contained the lack of protective metal shield defect, rendering the Class Loaders inherently unsafe, unreliable, and unfit for their ordinary use.

71. Despite Bobcat's knowledge of this defect, Bobcat failed to remedy the defect, continuing to market and sell the defective Class Loaders. The Class Loaders were subsequently sold to Plaintiff and Class members in immediate breach of Bobcat's express written warranty.

72. As a direct and proximate result of Bobcat's breach of its express warranty in violation of Minn. Stat. §§ 325G.19, 336.2-313, Plaintiff and Class members have sustained damages in an amount to be determined at trial. Plaintiff, individually and on behalf of all other Minnesota Class members, seeks all damages permitted by law in an amount to be proven at trial.

73. The amount in controversy of Plaintiff and the Class's aggregate claims meets or exceeds $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

## COUNT 4
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Minn. Stat. § 336.2-314

74. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this Count individually and on behalf of all Class members.

---

[8] Bobcat, Warranty 1 (2016).

18

76.    Bobcat's written warranty claims:

THIS WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER
WARRANTIES AND CONDITIONS, EXCEPT THE WARRANTY OF TITLE.
BOBCAT COMPANY DISCLAIMS ALL OTHER WARRANTIES AND
CONDITIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED
WARRANTIES OR CONDITIONS OF MERCHANTABILITY OR FITNESS
FOR A PARTICULAR PURPOSE.

77.    Contrary to Bobcat's assertions, Minn. Stat. § 325G.19 provides that "[n]o express warranty arising out of a consumer sale of new goods shall disclaim implied warranties of merchantability, or where applicable, of fitness." Minn. Stat. § 325G.19, subd. 1.

78.    Minn. Stat. § 336.2-314 provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Minn. Stat. § 336.2-314, subd. 1.

79.    Bobcat is a "merchant" as defined in Minn. Stat. § 336.2-104(1).

80.    The transfer of ownership from Bobcat to Plaintiff and Class members is properly a "sale" as defined in Minn. Stat. § 336.2-106.

81.    The defective Class Loaders sold by Bobcat to Plaintiff and Class members are "goods" as defined in Minn. Stat. § 336.2-105(1).

82.    Minn. Stat. § 336.2-314 provides that goods sold within Minnesota must, among other things:

(a)    pass without objection in the trade under the contract description; and
(b)    in the case of fungible goods, are of fair average quality within the description; and
(c)    are fit for the ordinary purposes for which such goods are used; and
(d)    run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
(e)    are adequately contained, packaged, and labeled as the agreement may require; and
(f)    conform to the promises or affirmations of fact made on the container or label if any.

Minn. Stat. § 336.2-314.

83.     The protective metal shield defect in the engine of the Class Loaders presents a constant threat that the Loader will, at minimum, cease operating at any given time and location, but further, presents a constant threat that the friction within the engine will erode the fuel lines, leading to instantaneous combustion of the engine, the Loader, and its occupants.  This defect renders the Class Loaders prohibitively dangerous, unreliable, and unpredictable. Within the industry Compact Track Loaders are used because they are durable, reliable, and safe for the purposes for which they are used.  Thus, this defect renders the Class Loaders unfit for the ordinary purposes for which they are used.

84.     As a direct and proximate result of Bobcat's breach of its implied warranty in violation of Minn. Stat. § 336.2-314, Plaintiff and all Class members have sustained damages in an amount to be determined at trial. Plaintiff, individually and on behalf of all other Minnesota Class members, seeks all damages permitted by law in an amount to be proven at trial.

85.     The amount in controversy of Plaintiff and the Class's aggregate claims meets or exceeds $5,000,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

## VII.   CLAIMS FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in his favor and against Defendant Bobcat as follows:

1.      Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

2.      Ordering Bobcat to pay actual and statutory damages, as allowable by law;

3.      Ordering Bobcat to provide restitution to Plaintiff and Class members as allowable

        by law;

4.      Upon filing a motion and approval by the Court, ordering Bobcat to pay punitive

        damages as allowable by law;

5.      Ordering Bobcat to pay pre- and post-judgment interest on any amounts awarded;

6.      Ordering Bobcat to pay attorneys' fees and related costs; and

7.      Ordering such relief as may be just and proper.

## IX.    JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**RESPECTFULLY SUBMITTED,** this 4th day of December, 2017.

**JOHNSON BECKER, PLLC**

By *s/Timothy J. Becker*
Timothy Becker (0256663)
David Grounds (0285742)
Jennell K. Shannon (0398672)
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1804 (phone)
(612) 436-4801 (fax)
tbecker@johnsonbecker.com

**MOHRMAN, KAARDAL & ERICKSON, P.A.**

By *s/Gregory Erickson*
Gregory Erickson (0276522)
150 South Fifth Street, Suite 3100
Minneapolis, MN 55402
(612) 465-0937 (phone)
(612) 341-1076 (fax)
erickson@mklaw.com

*Attorneys for Plaintiff and the Proposed Class*

21